IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY R., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 22-cv-05824 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony R.[2] filed this action seeking reversal or remand of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under the Social Security Act (the Act). [1]. For the reasons stated below, the Court denies Plaintiff's motion for summary judgment [16] and grants the Commissioner's motion for summary judgment [17].

**I. PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits on July 24, 2020, and SSI on June 14, 2021, alleging that he became disabled on April 20, 2019. [13-1] at 26 (ALJ decision).[3] The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.*). On October 19, 2021, Plaintiff,

---

[1] Martin O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[2] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[3] The Court uses the CM/ECF page numbers on the filings.

represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) by telephone due to the extraordinary circumstances of the COVID-19 pandemic. (*Id.*). The ALJ also heard testimony from David Biscardi, a psychologist expert (P.E.), Henry Urbaniak, M.D., a medical expert (M.E.) and Roxanne Benoit, a vocational expert (V.E.). (*Id.*). The ALJ denied Plaintiff's request for benefits on December 23, 2021. (*Id.* at 26-42).

Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since the application date of April 20, 2019. (*Id.* at 28). At step two, the ALJ found that Plaintiff had severe impairments including: diabetes, a L3-L4 mild annular bulge, right foraminal disc protrusion/spur, mild facet arthropathy bilaterally, mild lateral foraminal stenosis, a L4-L5 mild annular disc bulge with moderate facet arthropathy, mild central canal stenosis, a L5-S1 central disc protrusion slightly eccentric to the right with partial effacement of the ventral spinal canal fat but no stenosis, status post left hip arthroplasty, obesity, depression, anxiety and anti-social personality disorder. (PTSD). (*Id.* at 29). The ALJ found Plaintiff's medical impairments significantly limited his ability to perform basic work activities. (*Id.*).

However, at step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id.*). Specifically, the ALJ found that the musculoskeletal listings for degenerative disc disease were recently updated and applicable as of April 2, 2021, and thus applicable to Plaintiff's

claim. (*Id*.). The ALJ considered listing 1.15, disorder of the skeletal spine resulting in compromise of a nerve root, and listing 1.16, lumbar spinal stenosis resulting in compromise of the nerve root or cauda equine. Both listings require that for at least a period of 12 months, the claimant had: (1) a documented medical need for a walker, bilateral canes, or bilateral crutches, AND/OR (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements with a documented need for a one-handed, hand-held assistive device that requires the use of other upper extremity or a wheeled and seated mobility device involving the use of one hand. The ALJ found that the record did not document those requisite elements. (*Id*.).

The record similarly did not support a listing under 1.17: reconstructive surgery or surgical arthrodesis of a major-weight bearing joint. The record did not document the requisite elements of: (1) a history of reconstructive surgery, (2) impairment related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for at least 12 months, or (3) a documented need for a walker, bilateral canes, bilateral crutches, or a wheelchair. The ALJ also found there was no listing section for diabetes or obesity. (*Id*.).

Nevertheless, the ALJ considered the medical conditions and found that the Plaintiff's diabetes and obesity did not result in effects on other body systems that meet or equal any listing sections. (*Id*. at 30.). The ALJ next assessed Plaintiff's mental impairments. (*Id*.). The ALJ found that the severity of Plaintiff's impairments, considered singly and in combination, do not meet or medically equal

the criteria of listings 12.04 (depressive bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). (*Id.*).

In making the findings, the ALJ considered whether the "paragraph B" criteria were satisfied. To satisfy "paragraph B", the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, on a sustained basis. (*Id.*).

In the ALJ's assessment, the Plaintiff has a mild limitation in understanding, remembering or applying information, and a moderate limitation in interacting with others, concentrating, and persisting or maintaining peace. (*Id.*). The ALJ further found that Plaintiff has a moderate limitation in adapting and managing himself, having issues with stress but handling changes in his routine "ok". (*Id.*). Because Plaintiff's mental impairments did not cause at least two marked limitations or more extreme limitations, the ALJ determined "paragraph B criteria" is not satisfied. (*Id.* at 31.).

The ALJ also considered whether "paragraph C" criteria were satisfied. In so doing, the ALJ determined that the record did not support exacerbations requiring significant medication adjustments or further inpatient psychiatric hospitalizations, and noted Plaintiff was able to leave the house and go out on his own. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[4] and determined that Plaintiff has the RFC to perform sedentary work except Plaintiff can:

> occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. [Plaintiff] can never climb ladders, ropes or scaffolds or have exposure to unprotected heights or dangerous moving machinery. [Plaintiff] can understand, remember, and carry out simple job instructions in a routine work-setting with few, if any, changes. [Plaintiff] can tolerate occasional interaction with coworkers and supervisors, but should not participate in any collaborative joint projects with them or engage the public, should not have a fast paced job with mandatory numerically strict hourly production quotas, but is able to meet end-of-day employer expectations.

(*Id*.).

The ALJ then determined at step four that Plaintiff is unable to perform any past relevant work but noted that there are jobs in significant numbers in the national economy that he can perform. (*Id*. at 40). Thus, the ALJ found that Plaintiff has not been under a disability since April 20, 2019, through the date of the decision. (*Id*. at 41). The Appeals Council denied Plaintiff's request for review on August 26, 2022. (*Id*. at 15-17). Plaintiff now seeks judicial review of the ALJ's decision, that stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Section 405(g) of the Act authorizes judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The Court may not engage in its own analysis of whether

---

[4] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a).

the plaintiff is disabled, nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "The ALJ's decision will be upheld if supported by 'substantial evidence,' which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014)). The Supreme Court has stated that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). The Court accords great deference to the ALJ's determination, but "must do more than merely rubber stamp the [ALJ]'s decision []." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (alterations in original) (quoting *Erhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)). The deferential standard "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports her

ultimate determination." *Noonan v. Saul*, 835 F. App'x 877, 880 (7th Cir. 2020). The Seventh Circuit has recently explained that what is required is "ALJs [to] provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (internal citations and quotation marks omitted). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). The Court may reverse and remand the decision "if the ALJ committed an error of law or based her decision on serious factual mistakes or omissions." *Judy M. v. Kijakazi*, No. 21 C 2028, 2023 WL 2301448, at *3 (N.D. Ill. Feb. 28, 2023) (citation omitted).

### III. DISCUSSION

Seeking remand or an award of benefits, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of record, and the ALJ's decision violated SSR 16-3p. [16] at 9-15. The Court analyzes each set of arguments in turn below.

**A. The ALJ did not fail to properly evaluate the medical opinions of record.**

Plaintiff argues that the ALJ failed to properly weigh the medical opinions of the testifying and treating expert witnesses. The Commissioner responds that a reasonable adjudicator could agree with the ALJ's assessment of the evidence, and the Court should affirm. The Court agrees with the Commissioner.

*i. The ALJ's decision*

With respect to Plaintiff's physical condition, the ALJ found that his diabetes

was under control and improved with adjustments in his medication [13-1] at 32-33 (describing how Plaintiff's treatments were "routine and conservative", his labs looked "pretty good overall", his "average blood sugars are okay", and Plaintiff himself "reported his diabetes was under control and he felt physically stable").

The ALJ also observed that while Plaintiff's spine did show significant bulging and other findings, his treatment was "routine and conservative." (*Id.* at 33.). Plaintiff was referred to pain management in January 2020, and treated with neurosurgery and referred to pain management again in June 2020. (*Id.*). One month later, Dr. Jani referred Plaintiff to physical therapy and a neurosurgeon. (*Id.*). In December 2020, after multiple pain management and physical therapy sessions, Plaintiff underwent bilateral epidural spinal injections. (*Id.* at 34.). By December 2020, Plaintiff reported a 60% improvement with medication, such that he increased his activity level. (*Id.*). One month later, in January 2021, Plaintiff reported his pain was normally managed on his medication. (*Id.*). In January 2021, an emergency room visit after he had a fall revealed "5/5 strength in all extremities, intact sensation, but tenderness over the left lumbar and left hip neurovascularly intact." (*Id.*). At that time, Plaintiff also "walk[ed] swiftly and without any gait issues.". (*Id.*). The ALJ reviewed these records and found that the "[Plaintiff's] treatment had been effective" and that the physical examination findings were consistent with the residual functional capacity limitations assessed. (*Id.*).

With respect to Plaintiff's mental condition, the evidence revealed Plaintiff's depression, anxiety, and anti-social personality disorder. (*Id.* at 35). There were no

other inpatient psychiatric hospitalizations or recommendations for such treatment. (*Id*.). Consistent with those records, the ALJ found that Plaintiff's treatment, outside of a hospitalization in 2019, has been "routine and conservative and primarily managed by medication". (*Id*.). The ALJ noted that Plaintiff improved when complying with his medications and avoiding alcohol. (*Id*.). Records from January-July 2020 noted that Plaintiff was doing well on his medications and Plaintiff testified his medication was especially helpful for his anxiety. (*Id*.). Mental status examinations were consistent with Plaintiff's mental limitational capacity. (*Id*. at 35-36.).

The ALJ heavily relied on the opinion evidence to determine whether Plaintiff was qualified for benefits.[5] There were four opinions regarding Plaintiff's physical abilities: state agency consultants James Madison, M.D. and Vidya Madala, M.D., who both found Plaintiff was capable of light work subject to postural restrictions; impartial medical expert Henry Urbaniak, M.D., who opined Plaintiff could perform sedentary work; and internist Hillary Ecker, M.D., who opined that Plaintiff could not sit, stand, or walk for more than two hours each and no more than ten minutes at one time, occasionally lift less than 10 pounds, required unscheduled breaks every fifteen minutes for ten minutes of break time, could handle, finger or reach for only 25% of the work day, and would be absent four or more days per month. [18] at 3; [13-1] at 38.

---

[5] The case is governed by the opinion regulations at 20 C.F.R § 404.1520C that provides the most important factors the ALJ are to consider when evaluating the persuasiveness of medical opinions and prior administrative medical findings "are supportability and consistency".

There were also 4 opinions regarding Plaintiff's mental capacities: two state consultant psychologists, who found insufficient evidence to render an opinion, impartial psychologist expert David L. Biscardi, Ph.D., and advanced registered nurse practitioner (ARNP) Timothy Morrill. Dr. Biscardi testified that Plaintiff remained capable of simple one-to-three step tasks in a routine work setting with few, if any, changes, and brief and superficial interaction with coworkers and supervisors. Dr. Biscardi clarified that this meant occasional interaction with coworkers and supervisors, no collaborative joint projects, no engaging with the public, and no fast-paced work or strict hourly production quotas, but the ability to meet end of day expectations. [13-1] at 38. ARNP Morrill completed a checkbox form assessing primarily moderate and marked limitations, holding that Plaintiff would miss more than three workdays per month, had symptoms that would interfere 21% or more with attention and concentration, and found moderate limitations in understanding, remembering or applying information, marked limitation in interacting with others, moderate limitation in concentration, persistence or pace, and marked limitations in adapting oneself. (*Id.*).

The ALJ relied upon the opinions of Dr. Urbaniak[6] and Dr. Biscardi. Plaintiff argues the ALJ's decision was erroneous in both regards. At the same time, the ALJ found Dr. Ecker's and ANRP Morrill's opinions were unpersuasive and did not rely upon them. Plaintiff appeals those decisions by the ALJ as well.

---

[6] The ALJ found that the two opinions of the State consultants (Drs. Madison and Madala) were inconsistent given the "later examinations documenting reduced power of knee extension and floor planter flection on examination", among other examination findings. [13-1] at 37.

*ii.     Dr. Urbaniak*

The ALJ found Dr. Urbaniak's opinions persuasive. (*Id*.). The ALJ found that his opinion was supported by (1) objective medical evidence, which he cited to in his opinion, (2) his ability to review the entire medical record and opportunity to observe Plaintiff's presentation at the hearing, (3) his specialties and skills, and (4) his years of experience evaluating Social Security disability claims and testifying at disability hearings. (*Id*.).

Plaintiff argues that the record shows that Dr. Urbaniak likely did not review the entire record. [16] at 8. The Court disagrees. The record supports the finding that Dr. Urbaniak likely reviewed the records and was confused during the hearing when Plaintiff's counsel asked him to review page 73 of Exhibit 14F. Specifically, Dr. Urbaniak noted that the exhibit was paginated in two places with two different numbers. So, while one count of pages listed the page number requested as page number 68, another count of pages properly listed that page as page number 73. Put another way, the record shows that page 73 of Exhibit 14F is marked page 73 on the top right-hand corner, and page 68 in the lower right-hand corner. Due to this reasonable confusion, there is no indication in Dr. Urbaniak's testimony that he failed to review the record, rather the records supports a finding that he was confused by the marking on the exhibit. There is thus not a basis to find that the ALJ's decision to rely on Dr. Urbaniak was based on an "error of law or based … on serious factual mistakes or omissions." *Judy M.*, 2023 WL 2301448, at *3. Indeed, the hearing transcript supports that Dr. Urbaniak considered and factored in the various findings

drawn to his attention in formulating his medical opinion regarding Plaintiff's physical limitations.

Plaintiff next argues that the ALJ pointed to both Dr. Urbaniak's medical expert experience with Social Security disability claims and his professional medical experience as an orthopedic surgeon in bolstering his opinion. While the ALJ could have expanded further on why Dr. Urbaniak's experience supported his opinion, the Court finds that it was an appropriate factor to consider, and therefore does not warrant reversal or remand. *See* 20 C.F.R. § 404.1520c(c)(4)-(5).

Finally, it is undisputed that the hearing took place telephonically, and Dr. Urbaniak could not have observed Plaintiff's presentation at the hearing. Thus, the ALJ's finding that Dr. Urbaniak's "opportunity to observe Plaintiff's presentation at the hearing" was error. Still, the ALJ gave other valid reasons, discussed *supra*, that allow the Court to meaningfully review the ALJ's decision. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). *See Buttles v. Kijakazi*, No. 22-2844, 2023 WL 5220913, at *3 (7th Cir. 2023) (internal citation omitted) ("An error is harmless if a remand would predictably result in the same outcome."). This error was therefore harmless.

    *iii.    Dr. Biscardi*

The ALJ found Dr. Biscardi's opinion persuasive, and Plaintiff argues the ALJ's reliance warrants reversal for several reasons. Plaintiff first argues that the ALJ summarized Dr. Biscardi's conclusion but did not provide any analysis of it. The Court disagrees.

The ALJ described Dr. Biscardi's testimony at the hearing, where he noted Plaintiff's severe mental impairments, but also noted that Plaintiff had no problems talking, hearing, seeing, following instructions, using his hands, getting along with others, and testified that his examinations appeared relatively normal.

Further, aside from Plaintiff's inpatient stay in 2019, Plaintiff engaged in activities such as shopping at stores, running errands with his girlfriend, attending church, and participating in social groups. [13-1] at 30, 38. Dr. Biscardi thus opined that he could not find support to find that Plaintiff met the "paragraph B" or "paragraph C" criteria. (*Id.*). The ALJ found Dr. Biscardi's opinion consistent with the medical examinations, Plaintiff's treatment history, the effectiveness of his medication, and his own reported activities of daily living. Considering this, the Court finds that here, the ALJ has adequately supported her reasoning. The Court also notes that "ALJs are subject to only the most minimal of articulation requirements". *Morales v. O'Malley*, No. 23-2796 at 2 (7th Cir. 2024) (clarifying *Warnell*, F.4th at 1053).

Finally, the transcript supports that Dr. Biscardi factored in Plaintiff's physical impairments, deferring to the physical medical expert (here Dr. Urbaniak) on whether Plaintiff's pain limited him to only sedentary work or caused specific concentration issues.

    iv.    *Plaintiff's treaters Dr. Ecker and ARNP Morrill*

The ALJ did not find Dr. Ecker's opinions persuasive. The ALJ reasoned that Dr. Ecker did not support her opinion with a detailed explanation, and her findings were inconsistent with the evidence, particularly the physical examination findings.

Specifically, her findings of limitations with Plaintiff's hands, arms and fingers were not supported by the generally normal upper extremity examinations.

In November 2020, Dr. Ecker also opined that Plaintiff had moderate to marked limitations in his mental abilities and aptitude to do unskilled work and had marked limitations in interacting with others and in adapting or managing himself. The ALJ did not find this opinion persuasive, finding that Dr. Ecker failed to support her opinion with a detailed explanation, and her treatment notes were inconsistent with that opinion. (*Id*. at 38) (Dr. Ecker's notes documented that in November 2020, Plaintiff was alert, oriented three times, had normal mood, affect, behavior and thought content, grossly intact memory, attention and concentration, intact judgment and insight, and no delusions or abnormal thoughts).

The ALJ also did not find ANRP Morrill's opinion persuasive because, according to the ALJ, ANRP Morrill did not support his opinion with a detailed explanation, and his opinion was inconsistent with his treatment notes that found Plaintiff cooperative, fully oriented, good mood, intact judgment, intact reasoning, intact memory and attention. (*Id*.).

The Court finds the ALJ's decision to not rely on Ecker or Morrill is supported by the evidence. No remand is required. As is the case here, the Seventh Circuit has held that an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes." *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021). *See also Fair v. Saul*, 853 F. App'x. 17, 21 (7th Cir. 2021) (ALJ

properly discounted treating physician's opinion where his "own records did not support his conclusions.")

In sum, the Court is satisfied that the ALJ has built a logical bridge between the evidence in the record and the ALJ's assessment. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion.").[7]

**B. The ALJ's decision did not violate SSR 16-3.**

Plaintiff argues that the ALJ's subjective evaluation of the Plaintiff's testimony was wrong, and the ALJ failed to provide rationale for why Plaintiff's statements were inconsistent with the record. [16] at 13-15. The Commissioner responds that the ALJ gave proper reasons for discounting Plaintiff's testimony [18] at 11-14. The Court agrees with the Commissioner.

The ALJ found that Plaintiff's statements were not entirely consistent for multiple reasons. First, the ALJ observed that Plaintiff's physical and mental capacities increased when he had treatment. Specifically, with various and targeted medications that controlled his diabetes, anxiety and his pain. Second, most of Plaintiff's treatment was routine and conservative. Third, many of Plaintiff's treatment notes and examinations reflected normal or underwhelming findings in

---

[7] The Court also rejects Plaintiff's argument that the ALJ's failure to ask the vocational expert about the potential impact of brief, superficial interactions, requires reversal. The ALJ clarified that Plaintiff was capable of occasional contact with coworkers and supervisors, and Dr. Biscardi agreed with this assessment. *See* [13-1] at 72-73. ("Yeah, I believe [Plaintiff] is able to briefly and superficially interact with coworkers, supervisors, and the public, Judge.").

comparison to Plaintiff's testimony. Fourth, Plaintiff performed many daily activities, including shopping at the store, going to church, engaging in social groups, and running errands. And lastly, the ALJ found Dr. Urbaniak's opinion that Plaintiff could perform sedentary work persuasive.

Plaintiff argues that the ALJ failed to explain why basic daily activities demonstrated an ability to work. [16] at 13. The Court agrees that there are differences between activities of daily living and activities in a full-time job, and the two should not be compared. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (activities of daily living and activities in a full-time job contain critical differences). Plaintiff is generally correct that "a claimant's ability to perform daily activities does not necessarily translate into an ability to work full time." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). At the same time, the law is clear that an ALJ may consider a claimant's daily activities to determine if they corroborate claims of pain. *Id*. (the ALJ correctly considered Plaintiff's daily activities to see if they corroborated the claimant's pain). Here, the ALJ did not equate Plaintiff's daily activities to full-time work. Rather, the ALJ considered Plaintiff's activities to determine where his testimony about his pain was credible. [13-1] at 32, 35. The ALJ relied on the medical records and the opinions of Dr. Biscardi and Dr. Urbaniak to reach the conclusion that Plaintiff could work with limitations. The Court does not find that the ALJ's assessment violated SSR 16-3 or was so erroneous as to warrant remand.

Plaintiff also challenges that his treatment was routine and conservative, noting that he was hospitalized for suicidal thoughts. But the ALJ considered his

2019 hospitalization in reaching her decision. The record support the ALJ's finding that Plaintiff improved with treatment. The ALJ's consideration does not warrant reversal.

Finally, the ALJ considered that Plaintiff uses a cane. But the ALJ relied on the medical examinations in the record showing no cane use and a normal gait, along with medical opinions that a cane was unnecessary. The same is true of a sit-stand option; most opinions found that to be an unnecessary accommodation.

Because the ALJ supported her RFC assessment with substantial evidence in the record, coupled with the deferential standard afforded to ALJs, the Court finds that a reversal and remand is unnecessary in this case.

## IV. CONCLUSION

For these reasons, the Court affirms the ALJ's decision and Plaintiff's motion for summary judgment [16] is denied and the Commissioner's motion for summary judgment [17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner. Civil case terminated.

E N T E R:

Dated: July 10, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge